UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

CLAUDE ROBINSON,                              :

                    Petitioner,    :

         -against-                           :   **REPORT AND RECOMMENDATION**

SUPERINTENDENT DAVID MILLER,                  :     05 Civ. 4496 (BSJ)(KNF)

                                      :
                    Respondent.
------------------------------------------------------------ X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE BARBARA S. JONES, UNITED STATES DISTRICT JUDGE

**INTRODUCTION**

      Claude Robinson ("Robinson"), proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The petitioner alleged his confinement by New York State is unlawful because: (1) his right to a fair trial was violated when, upon reversal of his first conviction and a remand for an independent source hearing, the court ordered him to "sit in a lineup" before conducting the independent source hearing; (2) his right to a fair trial was violated when the witnesses identified him, not "as the man who committed the crime, but as the man whom they saw at [his] previous trial and prior lineup that was [] suppressed as suggestive;" (3) it was suggestive to place him in a line-up viewed by the witnesses who had seen him at his prior trial, especially "after the arresting Detective told the witnesses over the phone . . . that [Robinson] would be in the lineup;" and (4) the identifications of him, as the perpetrator of the

1

charged crimes, should have been "suppressed as irreparable mistake in identifications." The respondent opposes the petition contending that, by pleading guilty, Robinson waived his claims that: (i) no independent source for the witnesses' in-court identification of him existed; and (ii) the line-up identifications were unduly suggestive. Moreover, according to the respondent, the state-court determination of these claims was neither contrary to nor an unreasonable application of clearly established federal law. The petition is addressed below.

## BACKGROUND

On November 14, 1995, at approximately 2:10 p.m., Robinson entered "Terra Cotta," a store, put his hand into the pocket of his blue Georgetown Hoyas jacket, suggesting he had a gun, and ordered Daria Sanford ("Sanford") to give him the money in the store's cash register and her wallet. Sanford complied. Robinson fled, after making Sanford lie on the floor in the rear of the store.

On November 28, 1995, at approximately 1:00 p.m., Robinson entered "Whodunit? Books," a bookstore, grabbed employee Laurie Davie ("Davie"), pushed her to the front of the store and demanded money from the cash register. Davie attempted to free herself and started screaming. Robinson fled the store, without taking anything.

On December 19, 1995, at approximately 4:30 p.m., Robinson entered "The Potted Garden," a store. He pushed employee Susan Benarick ("Benarick") to a sales counter, behind which employee Nejla Hennard ("Hennard") was standing. With his right hand in the pocket of his blue Georgetown Hoyas jacket, Robinson demanded money, threatening to shoot if the two women did not comply with his order. Hennard gave Robinson the money in the store's cash register. Robinson made both women enter a closet, in the rear of the store, before he fled.

2

On December 21, 1995, Robinson entered a children's store wearing his Georgetown Hoyas jacket, looked around and left. The store's employee became suspicious and contacted the police. A responding police officer noticed Robinson, wearing a Georgetown Hoyas jacket, in the company of another man. After observing Robinson for about twenty minutes, it appeared to the police officer that Robinson was "casing" two stores. The police officer detained Robinson, seized a pair of sunglasses that fell from his jacket during a frisk of him, handcuffed Robinson and transported him to a police precinct. Robinson was held for three hours in the police precinct, before the police conducted a line-up identification procedure. Benarick and Hennard viewed the line-up, and each identified Robinson, independently, as the man who robbed them. The police arrested Robinson and seized his jacket. The following day, Sanford and Davie also identified Robinson in separate line-up identification procedures conducted by the police.

A grand jury indicted Robinson on two counts of first-degree robbery and one count of attempted third-degree robbery. In the New York Supreme Court, New York County, Robinson made a motion to suppress the sunglasses, jacket and line-up identifications evidence as fruits of an illegal arrest. On May 7, 1996, after a hearing, the court denied Robinson's suppression motion and determined that Robinson's detention preceding the first line-up identifications did not constitute an arrest. On July 8, 1996, following a jury trial, Robinson was convicted of all counts in the indictment. Thereafter, he was sentenced, as a persistent felony offender, to concurrent terms of 25 years to life imprisonment.

Robinson appealed to the New York State Supreme Court, Appellate Division, First Department, from the judgment of conviction. On May 24, 2001, the Appellate Division: (1) reversed the judgment of conviction, after determining that Robinson's arrest was not based

3

on probable cause; (2) granted Robinson's motion to suppress physical evidence and all out-of-court identifications made of him, because his arrest was not based upon probable cause; and (3) remanded the case "for a new trial to be preceded by an independent source hearing as to all identifying witnesses." See People v. Robinson, 282 A.D.2d 75, 83, 728 N.Y.S.2d 421, 428 (App. Div. 1st Dep't 2001).

Upon remand, the prosecution obtained a court order for new line-ups to be held, in which some of the witnesses who had participated in the original line-up identification proceedings would participate. A police officer informed Hennard and Sanford that the robbery case, in which they had participated, was "going back to court" and that new line-up identification proceedings had to be conducted. On October 25, 2001, new line-ups were conducted. While Sanford was viewing the line-up, she asked the participants to turn their heads left and right. A filler seated next to Robinson turned his head in the opposite direction from everyone else in the line-up, facing Robinson directly. Robinson tapped the filler and indicated to him that he should turn the other way. Sanford stated she recognized Robinson both from the trial and from her encounter with him when he robbed "Terra Cotta." Hennard identified Robinson, after viewing the line-up, as the man who had robbed her at "The Potted Garden." A New York County grand jury charged Robinson with two counts of second-degree robbery and one count of attempted second-degree robbery.

In April 2002, the trial court conducted a combined independent source and Wade[1] hearing. Robinson made a motion to suppress the October 2001 line-up identifications of him as

---

[1] A pretrial hearing, held pursuant to United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926 (1967), is used to determine whether the pretrial identification of a criminal defendant resulted from impermissibly suggestive law enforcement procedures.

4

unduly suggestive. The court denied the motion, determining that: (a) the prosecutor established, by clear and convincing evidence, that the line-up identifications prior to the first trial and the in-court identifications made of Robinson at the first trial did not taint the October 25, 2001 line-up identifications, or any future line-up identifications; and (b) the October 2001 line-up procedures were not unduly suggestive, unfair or a product of police misconduct.

On April 8, 2002, Robinson pleaded guilty to two counts of second-degree robbery, in full satisfaction of all outstanding charges. Thereafter, he was sentenced, as a persistent felony offender, to concurrent terms of 16 years to life imprisonment.

Robinson appealed to the New York State Supreme Court, Appellate Division, First Department, from the judgment of conviction, arguing: (1) the prosecution did not meet its burden of establishing an independent source for the in-court identifications of him because the perpetrator of the charged crimes concealed his face, the witnesses were scared by the robber, and the witnesses identified him based on having seen him in tainted line-ups and at the first trial; (2) the line-up identifications conducted in October 2001 should have been suppressed, because they were unduly suggestive and the witnesses remembered him from his first trial and the line-up identification proceedings conducted prior to his first trial. On June 10, 2004, the Appellate Division affirmed the conviction, finding that: (i) "[t]he record supports the hearing court's independent source findings," and noted that each witness had an ample opportunity to observe Robinson and was able to describe him accurately; (ii) the hearing court denied properly Robinson's motion to suppress the October 2001 line-up identifications, and noted that the record establishes no substantial likelihood exists that Robinson would be singled out for identification and no evidence exists that the behavior of one of the fillers called any undue

5

attention to Robinson; (iii) Robinson was not entitled to have trial evidence suppressed on the ground that the October 2001 line-up identifications should have been conducted in a particular fashion; and (iv) the remaining arguments, concerning the independent source hearing, had no merit. See People v. Robinson, 8 A.D.3d 95, 96, 778 N.Y.S.2d 151, 152 (App. Div. 1st Dep't 2004). On October 22, 2004, the New York Court of Appeals denied Robinson's request for leave to appeal to that court. See People v. Robinson, 3 N.Y.3d 742, 786 N.Y.S.2d 821 (2004). The instant petition followed.

## DISCUSSION

*Impact of the Petitioner's Guilty Plea on His Federal Habeas Corpus Claims*

The respondent contends, relying on Tollett v. Henderson, 411 U.S. 258, 93 S. Ct. 1602 (1973), that because "[t]he hearing and the state court ruling occurred prior to petitioner's guilty plea and did not affect the voluntariness of his plea," the petitioner "waived his challenges to the suppression court's rulings." Additionally, "by pleading guilty after the suppression hearing, petitioner waived any claim regarding the suggestiveness of the lineup."

Generally, a state criminal defendant who pleads guilty, while represented by counsel, is barred from raising constitutional claims related "to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson, 397 U.S. 759, 90 S. Ct. 1441 (1970)]." Tollett, 411 U.S. at 267, 93 S. Ct. at 1608.

However, the Supreme Court carved out an exception to the general rule when it held that "when state law permits a defendant to plead guilty without forfeiting his right to judicial review

6

of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas proceeding." Lefkowitz v. Newsome, 420 U.S. 283, 293, 95 S. Ct. 886, 891-92 (1975). New York law permits a criminal defendant to plead guilty without foreclosing judicial review, on the merits, of alleged constitutional violations. See id. at 289-93, 95 S. Ct. at 889-91. More specifically, New York Criminal Procedure Law ("CPL") provides for post-guilty plea appeals from a denial of a motion to suppress identification testimony claimed to be tainted by improper pretrial identifications. See CPL §§ 710.20(6) and 710.70(2).

Robinson made a motion to suppress evidence of the court-ordered line-up identifications that followed after his conviction was reversed and the case was remanded to the trial court for an independent source hearing concerning the identifying witnesses. His motion was denied by the trial court, and Robinson pleaded guilty to the charges in the indictment. After he pleaded guilty, Robinson availed himself of the post-guilty plea appellate review procedures afforded to criminal defendants in New York. Since Robinson raised his constitutional claims in a timely fashion and in accordance with state procedure, he is not foreclosed from pursuing those claims in a federal habeas corpus proceeding. Therefore, the Court will analyze the claims Robinson raised in his application for a writ of habeas corpus.

*Unexhausted Claim*

Robinson contends his right to a fair trial was violated when, upon remand for an independent source hearing, the court ordered him to "sit in a lineup" before conducting the independent source hearing. Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies. See 28 U.S.C. § 2254(b) and (c). Robinson's claim of a

constitutional violation resulting from the court's order that line-up identifications proceedings precede the independent source hearing, is unexhausted because Robinson did not present it to the Appellate Division for adjudication.

Typically, a habeas corpus petitioner may not obtain relief from a federal court on an unexhausted claim. See 28 U.S.C. § 2254 (b)(1). However, when a claim has not been presented to a state court for adjudication, a federal court reviewing a habeas corpus petition may deem the claim exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). CPL § 440.10(2)(c) informs that a state court must deny a motion to vacate a judgment when, although sufficient facts appear on the record to permit adequate review of the issue raised upon the motion, a defendant failed unjustifiably to raise that issue on appeal.

The facts and circumstances pertinent to Robinson's claim are matters that are found in the record. However, Robinson failed to present this unexhausted claim to the Appellate Division. Robinson has not made a motion, in the trial court, to vacate the judgment of conviction, pursuant to CPL § 440.10, premised upon the unexhausted claim. If he were to make such a motion, the trial court would, perforce of CPL § 440.10(2)(c), have to deny that motion based on the petitioner's unjustifiable failure to raise the matters to the Appellate Division, through his direct appeal. Therefore, Robinson is procedurally barred from seeking state-court review of the unexhausted claim based on the line-up identifications conducted prior to the independent source hearing. As a consequence, this claim may be deemed exhausted by the court for the purpose of habeas corpus review. See Harris v. Reed, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9 (1989); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).

A procedural default may be excused by the court if a habeas corpus petitioner can show cause for the default and prejudice resulting from it, or that the court's failure to consider the federal claim will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991). To establish cause, a petitioner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). Objective factors that constitute cause include, inter alia, "some interference by officials" that made compliance with the applicable state procedural rule impracticable or "a showing that the factual or legal basis for a claim was not reasonably available to counsel." Id.

That was not done by Robinson and, as a consequence, his claim of impermissible line-up identifications, conducted prior to the independent source hearing, cannot be reviewed. A procedurally defaulted claim may also be entertained by a federal court when a petitioner can show that the court's failure to review his claim will result in a fundamental miscarriage of justice, because he is actually innocent. See Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998). Here, Robinson does not allege any facts to demonstrate that he is actually innocent of the charges for which he has been convicted. Therefore, the Court finds that Robinson's unexhausted claim is procedurally barred. As such, it cannot be reviewed in connection with the instant application for a writ of habeas corpus.

*Exhausted Claims*

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus where a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition only if the state court's adjudication resulted in a

decision that: (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. See 28 U.S.C. § 2254(d). The Supreme Court has interpreted "the contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) as having independent meaning. See Williams v. Taylor, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1519 (2000). A state-court decision is "contrary to" the Supreme Court's precedent: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law;" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. Id. at 405, 120 S. Ct. at 1519. A state-court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court, if: (1) "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;" or (2) "the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407, 120 S. Ct. at 1520. If a state prisoner's federal claim was adjudicated on the merits, a federal court must presume any determination of a factual issue made by a state court to be correct and a habeas corpus petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). A petitioner bears the burden of showing that his constitutional rights have been violated by a preponderance of the evidence. See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Robinson contends his right to a fair trial was violated when the witnesses identified him, "not as the man who committed the crime, but as the man whom they saw at [his] previous trial and prior lineup that was []suppressed as suggestive." Moreover, he contends, the October 2001 line-up identifications were unduly suggestive because the police officer who informed the identifying witnesses about the procedure told them Robinson would be in the line-up.

The respondent contends the in-court identifications were reliable because: (a) the line-up identifications made, before the first trial, were suppressed, as the products of an illegal detention and not because they were unduly suggestive; (b) the identifying witnesses were able to select Robinson, as the perpetrator of the charged crimes, based on their memory of the robbery; and (c) the identifying witnesses had a clear view of Robinson's face during the robberies, unaffected by fear. Additionally, according to the respondent, the state court's finding, that the October 2001 line-up identification procedures were not unduly suggestive, was neither contrary to nor an unreasonable application of clearly established federal law.

The Appellate Division reviewed and rejected, on the merits, Robinson's claims that: (1) the prosecution failed to establish an independent source exists for identifying him as the perpetrator; and (2) the October 2001 line-up identifications were unduly suggestive. In support of his habeas corpus petition Robinson repeats the same arguments he presented to the Appellate Division. However, Robinson failed to identify how the state-court decision on his claims was either contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court. Furthermore, Robinson failed to show that the state court's decision on his claims is grounded on an unreasonable determination of the facts. Additionally, Robinson did not present any evidence to the Court that rebuts the presumption of correctness

accorded to the factual findings made in the state courts respecting his claims. See 28 U.S.C. § 2254(e)(1). Therefore, the Court finds that Robinson failed to meet the burden imposed on him by the relevant statute. Consequently, he is not entitled to habeas corpus relief based on his claims that have been adjudicated, on the merits, by the state court.

## RECOMMENDATION

For the foregoing reasons, I recommend that the petition be denied.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Barbara S. Jones, 500 Centre Street, Room 540, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 620, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Reynoso, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York  
March 21, 2008

Respectfully submitted,

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Claude Robinson
Alyson Gill, Esq.